# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2404

_____

United States of America,         *
                                    *

        Appellee,         *
                                 *   Appeal from the United States

     v.                  *   District Court for the
                                 *   Southern District of Iowa.

Michael Byron Abrahamson,    *

        Appellant.      *

_____

Submitted: February 16, 2012
Filed: July 23, 2012

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Michael Byron Abrahamson appeals his conviction and sentence for conspiring to manufacture methamphetamine. For the reasons set out below, we affirm.

## I.    BACKGROUND

During a search of Abrahamson's residence on August 5, 2010, law enforcement officers discovered pseudoephedrine, empty pseudoephedrine packaging, receipts for pseudoephedrine purchases, lithium batteries, lithium battery

packaging, muriatic acid, coffee filters later found to contain methamphetamine sludge residue, and other items used in or indicative of the manufacture of methamphetamine. Abrahamson was charged by complaint on December 1, 2010 with conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. He appeared before a magistrate judge for his initial appearance on December 6, was charged by grand jury indictment on December 15, and was arraigned on February 4, 2011. His jury trial commenced on February 22.

From the time of his arrest, Abrahamson claimed that he was an "ultimate user" of methamphetamine within the meaning of 21 U.S.C. § 822(c)(3) and that his conduct was therefore not criminal. At trial, Abrahamson took the stand, admitted to conspiring to manufacture methamphetamine, and claimed that he used methamphetamine as medication for various ailments. He then requested that the district court instruct the jury that if it found Abrahamson to be an "ultimate user" of methamphetamine, meaning that he was seriously injured and using his methamphetamine to address that serious injury, it should find him not guilty. The district court[1] refused to give such an instruction, and the jury found Abrahamson guilty. The district court denied Abrahamson's motion for a judgment of acquittal and for a new trial and sentenced him to 240 months' imprisonment, the applicable mandatory minimum pursuant to 21 U.S.C. § 841(b)(1), because it found that Abrahamson had a prior felony drug conviction.

On appeal, Abrahamson argues that the Speedy Trial Act was violated, that the district court erred in refusing to give his proposed instruction to the jury, that the evidence presented at trial was insufficient to convict him in light of his ultimate user defense, and that his sentence violated the Sixth Amendment because the district

---

[1] The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

court made a factual finding as to a prior conviction that he asserts should have been presented to a jury.[2]

## II.   DISCUSSION

### A.  Speedy Trial Act

The Speedy Trial Act provides that trial against a defendant cannot, without the defendant's consent, begin "less than thirty days from the date on which the defendant first appear[ed] through counsel." 18 U.S.C. § 3161(c)(2). While the Government argues that this requirement was satisfied because more than thirty days passed between the date of Abrahamson's first appearance through counsel—his initial appearance after arrest on December 6, 2010—and the commencement of his trial on February 22, 2011, Abrahamson asserts that this initial appearance does not qualify as a first appearance within the meaning of the Speedy Trial Act because it occurred before he was indicted. His first appearance after indictment was his arraignment on February 4, eighteen days before his trial commenced.

Abrahamson relies primarily on the Ninth Circuit's opinion in *United States v. Daly*, in which the court stated that § 3161(c)(2)'s "30-day period begins to run when an attorney appears on a defendant's behalf *after the indictment or information has been filed*." 716 F.2d 1499, 1505 (9th Cir. 1983) (emphasis added). In *United States v. Rojas-Contreras*, though, the Supreme Court held that § 3161(c)(2)

> clearly fixes the beginning point for the trial preparation period as the
> first appearance through counsel. *It does not refer to the date of the*

---

[2]Abrahamson also requested leave to file a *pro se* supplemental reply brief, despite being represented by counsel. "[G]enerally we do not consider *pro se* briefs when a party is represented by counsel," *Wayne v. Benson*, 89 F.3d 530, 535 (8th Cir. 1996), and we therefore deny Abrahamson's motion.

*indictment . . . .* It is clear that Congress knew how to provide for the computation of time periods under the Act relative to the date of an indictment. Had Congress intended that the 30-day trial preparation period of § 3161(c)(2) commence or recommence on such a date, it would have so provided.

474 U.S. 231, 234-35 (1985) (emphasis added). *Daly* was decided before *Rojas-Contreras*, so, to the extent it holds that the thirty-day period begins only after the return of an indictment, we decline to follow it.

On December 6, 2010, Abrahamson appeared before the district court with counsel who had been appointed to represent him "for all proceedings." Since more than thirty days passed between this first appearance and Abrahamson's trial date, there was no Speedy Trial Act violation. *See id*.

### B. Ultimate User

Abrahamson argues both that the district court should have given his proposed ultimate user jury instruction and that, in light of his ultimate user defense, the evidence presented at trial was insufficient to sustain his conviction. "A defendant is entitled to a jury instruction if the request is timely, the evidence supports the instruction, and the proffered instruction correctly states the law." *United States v. Santisteban*, 501 F.3d 873, 881 (8th Cir. 2007). Reversal for evidentiary sufficiency is warranted only when "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Espinosa*, 585 F.3d 418, 423 (8th Cir. 2009) (quoting *United States v. Thompson*, 533 F.3d 964, 970 (8th Cir. 2008)).

Abrahamson requested that the district court give the following jury instruction:

If you find that Michael Abrahamson is an ultimate user of methamphetamine who possessed the methamphetamine for a specified

purpose, then he may lawfully possess the methamphetamine and you must find him not guilty.

It is a specified purpose, for which the defendant may possess methamphetamine, to address injury that involves protracted loss or impairment of the function of a mental facility.

The district court refused to give this instruction.

The registration requirements for the manufacture, distribution, and dispensation of controlled substances are set forth in 21 U.S.C. § 822. Those who register with the Attorney General pursuant to this section are "authorized to possess, manufacture, distribute, or dispense" the substances for which they obtained registration. Section 822(c) sets out the exceptions to the statute's registration requirements. Among those excepted from registration are "ultimate user[s] who possess[] such substance for a purpose specified in section 802(25) of this title." § 822(c)(3). Section 802(25) contains the statutory definition of "serious bodily injury." An ultimate user is defined for the purposes of the statute as "a person who has lawfully obtained, and who possesses, a controlled substance for his own use or for the use of a member of his household or for an animal owned by him or by a member of his household." 21 U.S.C. § 802(27).[3]

Abrahamson contends that he provided testimony at trial demonstrating that he was suffering from a serious bodily injury, that he used his methamphetamine to treat that injury, and that therefore he was exempt from registration under § 822(c)(3) as an ultimate user. If he was exempt from registration, then, he argues, his conspiring

[3]When § 822 was initially codified, § 802(25) contained the statutory definition of the term ultimate user. Subsequent amendments to § 802 renumbered that definition as § 802(27), putting the definition of "serious bodily injury" in its place. *See* Pub. L. No. 99-570, § 1003(b)(2), 100 Stat. 3207; Pub. L. No. 98-473, § 507(a), 98 Stat. 1837. It appears that the cross-reference in § 822(c)(3) was not updated.

to manufacture methamphetamine was not illegal, and he was entitled to his ultimate user jury instruction.

Even assuming that Abrahamson qualified as an ultimate user, we do not read § 822(c)(3) as allowing an ultimate user to conspire to manufacture methamphetamine. Section 822(b) states that "[p]ersons registered by the Attorney General under this subchapter . . . are authorized to *possess, manufacture, distribute, or dispense* [controlled] substances . . . to the extent authorized by their registration and in conformity with the other provisions of this subchapter" (emphasis added). However, the activities allowed under the registration exception provision are narrower. Section 822(c) states that "[t]he following persons shall not be required to register and *may lawfully possess* any controlled substance . . . under this subchapter" (emphasis added). Comparing these subsections, it is clear that, while those registered can possess, manufacture, distribute, or dispense controlled substances, those relying on the exemptions to registration are only allowed to possess such drugs.

Since Abrahamson was charged with conspiring to manufacture, and not possession of, methamphetamine, even if he could show that he was an ultimate user within the meaning of § 822(c)(3), that would not provide him a defense to the charge he faced—conspiring to manufacture methamphetamine. His proposed jury instruction, calling for a verdict of not guilty of the charge of conspiring to manufacture methamphetamine if the jury found him to be an ultimate user, was an incorrect statement of the law, and the district court did not abuse its discretion in rejecting it. *See Santisteban*, 501 F.3d at 881. In light of the fact that Abrahamson himself testified that he conspired to manufacture methamphetamine, we also conclude that the evidence presented at trial was sufficient to convict him of manufacturing methamphetamine.

### C. Sixth Amendment

Abrahamson argues that the application at sentencing of a statutory mandatory minimum sentence based on the district court's finding of a prior felony drug conviction violated his Sixth Amendment rights. He contends that the existence of a prior conviction is a factual determination, properly within the province of the jury and not the judge. He is incorrect. The Supreme Court has found expressly constitutional under the Sixth Amendment the imposition of increased mandatory minimum sentences on the basis of judge-found facts, *Harris v. United States*, 536 U.S. 545, 568 (2002), and Abrahamson's Sixth Amendment claim fails as a result.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____