# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2599

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Jason Lee Bowers, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 18, 2011
Filed: May 6, 2011

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Jason Lee Bowers of four counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and four counts of carrying and using a firearm in relation to, and possessing a firearm during and in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(c). He was sentenced to 1,092 months. He appeals arguing that there was insufficient evidence for three of the counts, and that his motion for new trial should have been granted because the verdicts were contrary to the evidence. He also contends that the district court[1] abused its discretion

_____

[1]The Honorable Robert W. Pratt, Chief United States District Judge for the Southern District of Iowa.

in allowing an FBI agent to testify as an expert, and that his sentence was improperly enhanced based on factors not charged in the indictment. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

A masked man robbed South Story Bank & Trust in Slater, Iowa, on October 9, 2009. He carried a sawed-off shotgun. He ordered a teller at gunpoint to fill his duffel bag with cash, and then took the keys to another teller's car. He fled in the car, later found abandoned in a local cemetery.

On October 16, a customer standing outside the Farmers & Merchants Bank in St. Charles, Iowa, observed a blond man cutting through a yard heading toward the bank. As the customer entered the bank, the man came up behind him, pushed a gun into his back, and ordered him into the bank. The customer, seeing a silver, long-barreled revolver, complied. The robber, his face now covered with a mask, told all employees and customers to get on their knees. He commanded one teller to fill a bag with cash and another to give him her car keys. He fled in the employee's minivan, later found abandoned at a cemetery outside town.

On October 17, a masked man wearing all black and carrying a gun robbed Peoples Trust & Savings in Rippey, Iowa. He told two employees and a customer to get on the floor, adding the gun "is not a toy." He took money and the keys to a teller's car. The car, with a black stocking cap nearby, was later found in a local cemetery.

Four days later, on October 21, a masked man, waving a handgun in the air, robbed First Trust and Savings Bank in Oxford, Iowa. He also took a loan officer's car keys. As he left the bank, there was a loud pop and the robber said, "Oh, sh-t.

Sorry." Several witnesses thought the loud pop was a gunshot; others thought it was a cap gun.

The car was recovered in a residential section of Grinnell, Iowa, and swabbed for DNA. Defendant Bowers could not be eliminated as the source of DNA on the console and interior driver's door pull. In the car was an unspent bullet, which the loan officer/car owner testified was not his.

The FBI did not locate a complete bullet at the Oxford bank, but did find metal fragments under the bank's floor mat, a defect or indentation in the mat, and a chip or defect in the tile floor. FBI Special Agent Thomas J. Reinwart processed the Oxford bank scene, noted these details, and seized "a possible lead tip from potentially a bullet" and lead fragmentation. He testified he thought the bullet skipped off the tile under the mat and "contained itself underneath the mat." Bowers does not object to the admission of Reinwart's testimony.

There was inconsistent testimony about the fragments found at the Oxford bank. FBI Agent Jeff Atwood, a firearms instructor and trained sniper who had fired many rounds and seen lots of bullet fragments, testified the Oxford fragments were consistent with a spent slug. Also admitted was a report by an FBI employee in the Firearms/Toolmarks unit, John B.H. Webb. His report stated the Oxford fragments were "not consistent with bullet fragments."

Bowers was arrested, Mirandized, and interrogated. He admitted using firearms to rob the four banks. He provided numerous facts (many not public knowledge) about the four robberies. He gave a written statement taking full responsibility for them, including the use of a .38 caliber firearm during the last three robberies. In his statement, he said he was worried that someone could have been injured when the gun accidentally went off during the Oxford robbery.

Eyewitnesses testified about the guns used in the robberies. Several witnesses were familiar with firearms and testified about details that indicated they believed the guns to be real. The jury saw videotapes of the robberies. FBI Agent Atwood watched the videotapes, noting certain characteristics of the guns. He testified that the gun used in the first robbery was a pump-style shotgun (probably a Remington), and that .38 or .357 revolvers were the weapons in the last three.

Bowers challenges the denial of his motion for new trial and his conviction on three of the counts. He alleges allowing Atwood to offer his opinion that the Oxford fragments were bullet fragments was an abuse of discretion. Finally, he challenges the enhancement of his sentence based on prior convictions not charged in his indictment or determined by the jury.

## II.

The sufficiency of the evidence is reviewed de novo. ***United States v. Stenger***, 605 F.3d 492, 503 (8th Cir. 2010). All reasonable inferences are accepted that support a jury verdict. ***Id.*** The verdict will be upheld if any interpretation of the evidence could lead a jury to find guilt beyond a reasonable doubt. ***Id.***

Because the guns were never recovered, Bowers argues that the government did not prove he used genuine firearms, rather than toys or replicas, in the last three robberies. However, the use of a firearm can be "established solely by eyewitness testimony." ***Id.*** at 504. The possibility that a gun is fake does not prevent a reasonable jury from determining the gun was real. ***Id.***

The jurors heard the eyewitnesses' testimony about the guns they observed at close range during the robberies. The jury saw videotapes of the robberies. Bowers confessed in writing to using firearms in the robberies. The evidence was sufficient to establish he used real guns during the last three robberies.

Bowers' argument that the government did not prove he used real firearms was also the basis for his motion for new trial. Because the evidence was not so heavily against the verdicts that a miscarriage of justice may have occurred, , the court did not abuse its discretion in denying his motion for new trial. *See **United States v. Starr***, 533 F.3d 985, 999 (8th Cir. 2008).

III.

The district court's admission of Atwood's expert testimony is reviewed for abuse of discretion. ***United States v. Rodriguez***, 581 F.3d 775, 793 (8th Cir. 2009). To be excluded, an expert's testimony must be so "fundamentally unsupported" that it can not assist the jury. ***United States v. Finch***, 630 F.3d 1057, 1062 (8th Cir. 2011). Generally, the factual basis of the testimony goes to the weight of the evidence and any doubts as to the usefulness of the testimony should "be resolved in favor of admissibility." ***Id.***

Atwood's testimony was relevant to Bowers' use of a real firearm in the Oxford robbery. Bowers objects to the testimony that the metal shards found under the bank's floor mat were consistent with bullet fragments. Bowers asserts this testimony was particularly prejudicial because it contradicted another FBI employee's opinion and involved a critical fact – use of a firearm.

Allowing Atwood to testify, the district court correctly stated that Bowers' objections went to the weight of the evidence. *See **id.*** Bowers cross-examined Atwood. The jury watched videotapes of the robbery. Additionally, eyewitnesses who heard the pop testified they thought it was a gun discharging. The jury was able to evaluate Atwood's testimony by "traditional and appropriate means." *See **Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 596 (1993). Allowing Atwood to testify was not an abuse of discretion, because the testimony was fundamentally supported and useful to the jury. *See **Finch,*** 630 F.3d at 1062.

IV.

A constitutional challenge to a sentence is reviewed de novo. ***United States v. Wade***, 435 F.3d 829, 831 (8th Cir. 2006) (per curiam).

Bowers asserts that he was not indicted for multiple successive convictions, and thus cannot be sentenced under § 924(c)(1)(C)(i), relying on *United States v. O'Brien,* 130 S. Ct. 2169, 2174 (2010). The *O'Brien* Court examined a different clause, § 924(c)(1)(B)(ii), which requires a 30-year sentence for use of a machine gun. The Court found the fact that the firearm was a machine gun is an element of the offense, not a sentencing factor. Sentencing factors can be proved to a judge at sentencing, while elements of the offense have to be charged in the indictment and proved to a jury. ***Id.*** at 2174-80. Bowers argues his convictions are elements of the offense and must be charged in the indictment and proved to a jury.

The government responds that the §924(c)(1)(C)(i) enhancement may be based on successive convictions charged in the same indictment. *See **United States v. Weist***, 596 F.3d 906, 911 (8th Cir. 2010). A "'second or subsequent' conviction can occur in the same proceeding." ***Id.***, *citing **Deal v. United States***, 508 U.S. 129, 134-36 (1993).

Bowers reliance on *O'Brien* is misplaced because in that case the Court expressly recognized that clause (C)(i) is a recidivist provision, which is typically a sentencing factor. ***O'Brien***, 130 S. Ct. at 2180, *citing **Almendarez-Torres v. United States***, 523 U.S. 224, 230 (1998). The district court did not violate *O'Brien* by sentencing Bowers for multiple convictions.

The judgment is affirmed.

_____